Deseigny, J
delivered the opinion of the court Both parties admit that if Johnson himself had filled the blank of the check, the transfer of the property would have been complete, and his testamentary executor would have aright to receive the money. Any question therefore as to the regularity of the check is put at rest by that admission.—But it is contended that the right to fill the blank of the check was personal to Johnson, and did not pass to his representative.
This is probabh a case, the like of which we would in vain search for ; it must be decided according to general principles, by analogy —Men will sometimes place such confidence in others as to trust them with a blank paper bearing their signature, to be filled by the trustee according to agreement, or with an obligation, part of which is written, and part remains to be written by the person so trusted. In all such cases it is evident that a power to fill the blank is given to the trustee by the subscriber, and that such a power is exclusive and personal, and cannot be transmitted to any body else, without the consent of him who gave it; for nothing would be more absurd th m to permit any person to exercise a right, which was granted to a particular individual *718 from an implicit confidence in his probity and 1 virtue.
ft is not to be expected that much may be found in law books upon this very unusual mode of transacting business, which now and then, when men, in the simplicity of their manners, could rely on each other’s honesty, was indulged in. Ferriere, however, in his doctrine de droit, vo. blanc seing, speaks of it as follows ; “ Blanc seign is a paper signed at the bottom by him who intends to bind himself, give acquittance, or compromise at the, discretion of the person whom he entrusts with such blanc seing, giving him power to fill it with what he may think proper, according to agreement.”— This power, we say, is personal, and, as ajl other powers, dies with the attorney.
But if the plaintiff cannot recover on the blank check, he contends that the estate which he represents is entitled to the money, as being by Smith’s confession, and according to the proofs exhibited, the money of Johnson himself.
That this money cannot be claimed as a deposit, as the curator of Smith’s estate contends, must be acknowledged at once, the transaction between Smith and Johnson has none of the features of a deposit. No such thing as money ^vas ever deposited by Johnson in the hands of Smith: he gave him flour to sell, and Smith converted it into money.
*719 But we have to enquire whether the money 1 now in bank is the proceeds of that sale, and if so, whether the executor of Johnson has a right to take it ?
The evidence goes very far to shew that the money here in contest is the proceeds of the sale of Johnson's flour : but what proves positively this money to be Johnson’s property, is the acknowledgment of Smith himself, who, on his death bed, declares that the money, which he had deposited in the bank, belonged to his nephew Johnson. It is true that the expressions, which he uses, are that he wishes to make his will, “ on account of some money which he had belonging to his nephew,” this unaided by any other testimony would not signify absolutely that all the money deposited in bank by Smith was his nephew’s, but when we see that he ordered the sum to be left blank in the check, “ because he did not now recollect the amount he had in bank,” and that the check was so drawn on the advice of the president of the bank, it being communicated to him, that as the bank book was not settled, the check might be drawn in blank and afterwards filled up, when the amount in bank should be ascertained, there can remain no doubt that the intention of Smith was to give a check for whatever sum he had in bank, and that Ids acknowledgement, that he had *720 money in bank, belonging to his nephew, amounts’ ^ # ° ° 1 to a declaration that the money, which he had deposited there, was his nephew’s.
In a contest between the representative of Johnson and the representative of Smith, tou hi ng their respective rights to receive this money* such a declaration must be conclusive ; for the question here is not, whether Johnson is entitled to take in preference to the other creditors of Smith, such creditors., if any, being not parties to this suit; but simply whether Johnson has a right to recover the money, which Smith himself acknowledges to be his.
The intervention of Samuel Smith as executor of Johnson, having not changed the situation of G. Musson as special executor for this particular business, there is no need of taking any notice of it.
As to the sealed packet deposited in bank by Smith, there is no evidence that he acknowledged it to belong to Johnson; for Michael de Ar„ rnas, the only witness who makes any mention oí it, after having stated, in the first part of his deposition, that the check had been drawn for the sum of S3240, and a small bundle, declares upon recollection, that the sum was not filled up but left blank, making it thus improbable that any thing should have been written after the blank. At any rate} there is not upon this particular sub- *721 feet sufficient evidence to enable this court to de } _ _ cide that a sealed packet, deposited in bank by Smith in his own name, was the property of another person. This bundle (or rather its contents for it has been since opened) must be surrendered to the curator of Smith’s estate, vlaunsel Wchite, whose quality as such is not contested by any proper party ; Germain Musson, as executor of Johnson, having no interest to dispute it, and Samuel Smith having not justified himself to be, either the heir, or the executor of James, as he had alledged.
The judgment of the district court, therefore, though approved in all other respects, must be reversed on account of this.
It is, therefore, ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed ; and this court proceeding to give such judgment as th-.y think ought to have been rendered below, do order adjudge and decree, that the sum of three thousand two hundred and forty dollars, deposited in the office of discount and deposit of the bank of the United States, by James Smith, be delivered to Germain Musson, the special executor of James Johnston, and that the contents of the sealed packet, which had been deposite-! in the same office by said Smith, be delivered over to Maunsel *722 ^"te> curator of said Smith’s estate ; and it is further ordered, that each party in his respective capacity shall pay his costs, and one half of the costs incurred by the bank.